UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID SANCHEZ | No. 17 CR 489<br><br>Honorable Robert M. Dow |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The government asks the Court to sentence defendant David Sanchez to a total prison term of 120 to 144 months. Defendant was an armed drug dealer who pushed large amounts of highly addictive methamphetamine onto the streets of Chicago. Chicago is plagued by the drug trade and the gun violence it spawns, and defendant's conduct only added to those problems.

Defendant's serious crimes were compounded by his chronic substance abuse and unlawful presence in the United States. The government believes these aggravating factors warrant a significant prison sentence. Nonetheless, the government believes a total Guidelines sentence of 195 to 228 months – 16 to 19 years – is longer than necessary to advance the goals of sentencing set forth in 18 U.S.C. § 3553(a). In the government's view, a 10- to 12-year prison term is a fair punishment that strikes an appropriate balance between the aggravating and mitigating factors in this case, particularly given that defendant will be subject to deportation upon release.

I.   **OFFENSE CONDUCT**[1]

On February 24, 2017, defendant – after smoking methamphetamine – walked through the alley behind his Chicago apartment carrying a loaded 9 mm pistol, a drug ledger, and over $3,600 in cash. Back in his bedroom, defendant had three more loaded guns and hundreds of rounds of ammunition, including hollow-point 9 mm rounds. One of the guns was a loaded rifle leaning against the wall in defendant's closet. A few feet from those guns were 21 small baggies of heroin, packaged for resale, and 17.4 grams of pure methamphetamine. The methamphetamine was on defendant's nightstand near a tin with empty blue 1-inch by 1-inch baggies, a drug testing kit, a digital scale, and other drug trafficking tools.

One of defendant's methamphetamine customers testified at trial that he had purchased about four to five pounds of methamphetamine from defendant in the months before defendant was arrested. According to an FBI forensic examiner who examined the notebook defendant was carrying in his satchel and testified at trial, the notebook reflected a multi-drug distribution business involving over 20 accounts (or customers) at prices consistent with methamphetamine, cocaine, and heroin.

---

[1] Unless otherwise noted, the information in this section is derived from the Presentence Investigation Report ("PSR"), which includes the government's version and all exhibits thereto, and agents' audio- and video-recorded interview with defendant following his arrest. A transcript of the interview was not prepared.

2

A. **Defendant's Post-Arrest Statements**

After police stopped defendant in the alley behind his apartment, defendant denied that he sold guns or drugs. He consented to a search of his phone, on which law enforcement recovered this photo:



II. **SENTENCING GUIDELINES CALCULATIONS**

In the Presentence Investigation Report, the probation officer calculates the total adjusted offense level – which is based on the offense level for Count One under the grouping rules – to be 32 as follows.

| | |
|---|---:|
| Base offense level – Count One | +30 |
| Maintenance of drug premises   - Count One | +2 |
| **TOTAL** | **32** |

Defendant is in criminal history category II. Thus, according to the PSR, defendant's advisory Guidelines range is 135 to 168 months on Counts One and Four, which is in addition to the mandatory 60-month sentence on Count Two, which sentence is to run consecutively to the sentence on Counts One and Four.

The government agrees with the probation officer's calculations. The government also notes that the drug quantity underlying the base offense level on Count One and was based on the drugs defendant possessed on the day of his arrest and reflected in the drug ledger. It does not include the four to five pounds of methamphetamine that defendant's customer testified that defendant sold him in the months prior.

### III. GOVERNMENT'S RECOMMENDATION

The government recommends a total prison term of 120 to 144 months, which consists of a below-Guidelines sentence of 60 to 84 months on the drug count (Count One) and, as required by 18 U.S.C. § 924(c), and 60 consecutive months on the gun count (Count Three). The government also recommends a supervised release term of four years to ensure defendant conforms his conduct to the law and receives the appropriate support to do so.

#### A. Prison Term

Defendant, who was in the country illegally, dealt large quantities of a dangerous, addictive drugs to which he himself was addicted. That defendant chose

to protect himself with illegally-obtained guns – guns that defendant was evidently prepared to use – amplifies the need for a significant sentence here.

Nonetheless, given defendant's lack of criminal history relating to drug dealing or firearms and the likelihood that he will be deported upon release, the government believes a Guidelines sentence of 195 to 228 months, which is roughly 16 to 19 years, is greater than necessary to advance the goals of sentencing in this case. In the government's view, a 10- to 12-year sentence fairly reflects the seriousness of defendant's crime, while also taking into account the mitigating factors and his likely deportation.

In addition, as the Court is likely aware, in 2017 the Supreme Court held that district courts may consider the length of a § 924(c) mandatory minimum sentence when considering what sentence to impose for the § 924(c) predicate offense. In *Dean v. United States*, the Court held that "[n]othing in §924(c) restricts the authority conferred on sentencing courts by §3553(a) . . . to consider a sentence imposed under §924(c). __ U.S. __, 137 S. Ct. 1170, 1176-77 (2017). The holding in *Dean* superseded earlier Seventh Circuit precedent that required courts *not* to consider the § 924(c) sentence when imposing sentence on the predicate offense. *See United States v. Wheeler*, 857 F.3d 742, 745 (7th Cir. 2017) ("*Dean* supersedes *United States v. Roberson* . . . which had held that a district court must not reduce the sentence for the predicate crime in order to offset the consecutive § 924(c) sentence.").

5

*Seriousness of the offense.* Defendant obtained wholesale quantities of methamphetamine and cocaine and sold them to a variety of customers. He weighed and bagged the drugs himself, collected the proceeds, kept a ledger of his dealings, and protected his apartment and person with loaded firearms. In many drug trafficking organizations, these roles are often split up amongst different participants. Defendant, on the other hand, was essentially a one-man drug trafficking operation.

Through his drug trafficking operation, defendant pumped large amounts of a highly addictive drug onto the streets of Chicago, where it could destroy lives and tear apart families. Defendant must have understood just how destructive methamphetamine can be, as he himself regularly smoked methamphetamine and crack in the months leading up to his arrest.

Defendant's conduct also carried a serious risk of violence. Defendant had multiple loaded guns, both on his person and in the bedroom where he met with his drug customers. Why? The most obvious answer is to protect himself and his valuable product in the event a drug deal went bad or a debt unpaid. Defendant's substance abuse exacerbated the risk of violence given that methamphetamine and crack can impair judgment and lead to impulsiveness. Indeed, when defendant was arrested, he was walking in a Chicago alley high on methamphetamine carrying a loaded 9-millimeter handgun, over $3,000, and a drug ledger.

*Respect for the Law.* A significant sentence is also needed to promote respect for the law. Defendant committed very serious drug and gun crimes in the Chicago area despite having no lawful right to be in the United States. Moreover, while out on state bond for the instant offense, defendant was arrested in May 2017 for essentially the exact same offenses – possession of methamphetamine and unlawfully use of a weapon – causing the state to move to revoke his bond. The state dismissed the May 2017 charges after the federal government adopted the instant case. Defendant also failed to complete court-ordered community service following a traffic offense. PSR ¶ 62.

*Protecting the public and deterrence.* This case is defendant's first conviction involving drug trafficking or guns, which is a mitigating factor in the government's view. Defendant does have prior a misdemeanor battery and a DUI conviction. Nonetheless, give defendant's history of substance abuse and conduct that creates a risk of bodily harm to others, as well as his alleged conduct on bond as noted above and his penchant for possession firearms, a significant prison sentence is necessary to protect the public and prevent defendant form returning to drug trafficking or firearms.

*Defendant's history and characteristics.* Defendant had a stable but rough upbringing. He came to the United States from Mexico when he was 19 to flee his father's physical abuse. Once here, defendant held somewhat regular jobs before he lost his baby daughter in 2009 and began abusing more serious substances. Since

7

being incarcerated for the instance offense in 2017, defendant has completed a non-residential drug treatment course, taken ESL and resume-writing classes, and worked as an orderly, all without any disciplinary infractions. Defendant's conduct in prison, family support, employment history, and willingness to seek treatment for his substance abuse suggest defendant has the tools he needs to straighten out his life after prison. On balance, the government views defendant's personal history as a mitigating factor.

      **B.    Supervised Release**

The government recommends that the Court order a four-year period of supervised release following imprisonment. Supervised release is reasonable and appropriate to deter defendant from returning to criminal conduct and to ensure defendant receives appropriate support following his prison term. The government recommends that the Court impose the following conditions of supervised release.

            **1.    Mandatory Conditions Pursuant to 18 U.S.C. § 3583(d)**

- Defendant shall not commit another federal, state, or local offense.
- Defendant shall not unlawfully use or possess a controlled substance.
- Defendant shall cooperate in the collection of a DNA sample if the collection of such a sample is required by law.
- Defendant shall refrain from any unlawful use of a controlled substance AND submit to one drug test within 15 days of release on supervised release and at least two periodic tests thereafter, up to 104 periodic tests for use of a controlled substance during each year of supervised release.

## 2. Discretionary Conditions Pursuant to 18 U.S.C. §§ 3583(d) and 3563(b)

The following conditions should be imposed on the basis that they provide defendant with necessary rehabilitative support, deter defendant from future crimes, and facilitate supervision by the probation officer, which is important here to promote defendant's respect for the law and to deter defendant from future crimes:

- Defendant shall seek, and work conscientiously at, lawful employment or pursue conscientiously a course of study or vocational training that will equip you for employment. (Discretionary Condition 4) [2]
- Defendant shall refrain from knowingly meeting or communicating with any person whom he knows to be engaged in the sale of illegal drugs or any other illegal activity. (Discretionary Condition 6) (as modified)
- Defendant shall refrain from any use of alcohol (defined as having a blood alcohol concentration greater than .08%), or any use of a narcotic drug or other controlled substance, as defined in § 102 of the Controlled Substances Act, (21 U.S.C. § 802), without a prescription by a licensed medical practitioner. (Discretionary Condition 7)
- Defendant shall refrain from possessing a firearm, destructive device, or other dangerous weapon. (Discretionary Condition 8)
- Defendant shall participate, at the direction of a probation officer, in:
    - a substance treatment program, which may include urine testing up to a maximum of 104 tests per year.
    - a mental health treatment program, which may include the use of prescription medications. (Discretionary Condition 9)
- Defendant shall remain in the jurisdiction where the defendant is being supervised, unless granted permission to leave by the court or a probation officer. (Discretionary Condition 14)
- Defendant shall report to the probation officer as directed by the court or the probation officer. (Discretionary Condition 15)

---

[2] The condition references are to the form entitled Judgment in a Criminal Case, Form ILND 245B, revised on May 15, 2015.

9

- Defendant shall permit the probation officer to visit the defendant at any reasonable time at home or work, and to confiscate any contraband in plain view of the officer. (Discretionary Condition 16)

- Defendant shall notify the probation officer within 72 hours of any change in her residence, employer, or workplace and, absent constitutional or other legal privilege, answer questions by a probation officer. (Discretionary Condition 17)

- Defendant shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer. (Discretionary Condition 18)

- Defendant shall not enter into any agreement to act as informer for a law enforcement agency with the permission of the Court. (Special Condition 11)

## CONCLUSION

The government asks that the Court sentence defendant to a total prison term of 120 to 144 months and impose a three-year term of supervised release with the conditions listed herein.

Date: November 23, 2021

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

*/s/ Nicholas J. Eichenseer*
NICHOLAS EICHENSEER
Assistant United States Attorney
219 S. Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-1412