IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 17-cr-489 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| DAVID SANCHEZ. ) | |

**MEMORANDUM OPINION AND ORDER**

On August 14, 2019, a jury returned a verdict [87] finding Defendant David Sanchez guilty on two drug counts and one gun count (Counts One, Two, and Four) of the superseding indictment and acquitting him on another gun count (Count Three). Defendant has submitted a motion through counsel [134], and supplements to that motion filed *pro se* [137, 142], seeking a new trial and, alternatively, a judgment of acquittal. He contends that (a) his trial counsel was ineffective; (b) the Government adduced insufficient evidence at trial to sustain the jury's guilty verdict on Counts One, Two, and Four; and (c) some of the evidence adduced at trial was improperly obtained and should have been suppressed. For the reasons stated below, Defendant's motion and supplements [134, 137, 142] are denied.

**I.  Background**

    **A.  Procedural History**

On July 18, 2017, Defendant was indicted [see 1] on four counts alleging various narcotics and firearms offenses. He has been held in custody since the indictment. On June 7, 2019, Defendant filed a motion to suppress [61] seeking the exclusion of certain evidence obtained by law enforcement on the date of his arrest. On July 17, 2019, the Court issued a memorandum opinion and order [73] denying the motion to suppress. On August 7, 2019, the Government filed a superseding indictment [78] that again contained two drug counts and two firearms counts. The

case proceeded to a three-day jury trial that commenced on August 12, 2019. On August 14, the jury returned its verdict [87], finding Defendant guilty on Counts One, Two, and Four, and not guilty on Count Three.

Three months after trial, the Court granted the motion of trial counsel to withdraw [101] and substitute counsel entered his appearance [102]. Defendant has filed through counsel [134] and on his own [137, 142] a motion and supplemental filings seeking a judgment of acquittal and/or a new trial. The Government has responded to those submissions [138, 144].

### B. Evidence at Trial

The evidence at trial established that on February 24, 2017, law enforcement agents arrived at Defendant's apartment early in the morning to execute a search warrant approved by a state court judge. They encountered Defendant in the alley behind his apartment. He was carrying a loaded 9-millimeter pistol in his pants and had in his possession a satchel with more than $3,600 and a notebook. Tr. 274-281; 315-321. Later that morning, Defendant admitted to law enforcement agents that he was carrying the gun for protection. Tr. 332.

Agents escorted Defendant inside his two-bedroom apartment while they executed the search warrant. Defendant told agents which bedroom was his. Tr. 331. In that small bedroom and the adjacent closet, law enforcement recovered (a) pieces of identification in Defendant's name and/or photo, including a social security card and drivers license, (b) a loaded .22 caliber rifle, which contained Defendant's fingerprints, and two .25 caliber pistols; (c) more than 200 rounds of ammunition, including hollow-point 9mm rounds; and (d) narcotics including approximately 17.4 grams of pure methamphetamine, 21 small blue baggies containing approximately 4.2 grams of heroin, and several grams of cocaine. Tr. 162-208. The rifle was leaning up against a wall in the bedroom closet very close to the baggies of heroin. Tr. 198-99.

The methamphetamine was on the nightstand in a tin with empty blue 1-inch by 1-inch baggies, a drug testing kit, and other items. Tr. 169-82. In a different box in the same nightstand was a digital scale. Tr. 183.

One of the Government's expert witnesses, DEA Special Agent David Reynolds, testified that all of the items identified in the preceding paragraph are commonly used by drug traffickers. Agent Reynolds likewise further testified that the quantities of heroin and methamphetamine found in Defendant's bedroom were consistent with distribution as opposed to personal use and that drug traffickers commonly use or possess weapons to protect themselves and their valuable product. Tr. 218-25. A second expert, FBI forensic examiner Debra O'Donnell, examined the notebook that Defendant was carrying in his satchel when he was arrested. According to O'Donnell, the notebook reflected a multi-drug distribution business involving over 20 accounts (or customers) and least at 38 ounce-units sold to various accounts at prices consistent with the market rate for methamphetamine or cocaine, as well as other units at prices consistent with heroin. Tr. 284-08.

The Government also called as a witness Jeffrey Pierchala, who testified that he was one of Defendant's regular methamphetamine customers. Pierchala testified that he had been to defendant's apartment on many occasions to purchase meth. He identified a photo of Defendant's bedroom and testified that (i) he had purchased meth from Defendant on previous occasions in that bedroom and (ii) Defendant lived alone in the bedroom. Pierchala further stated that Defendant lived with a roommate who went by "Carlos," who also was involved in selling methamphetamine. According to Pierchala, Defendant called him "Chivo," a name that appears in several places in the drug ledger that agents recovered on Defendant's person when they encountered him in the alley. Tr. 227-37.

At trial, the parties entered into several stipulations: (1) that on the date of his arrest, February 24, 2017, Defendant was a citizen of Mexico who was in the United States unlawfully and knew that his presence in the United States was unlawful (Tr. 324); (2) that the parties were in agreement as to the drug types and quantities seized during the search (Tr. 182); and (3) that the firearms recovered from his person and bedroom were operational and had traveled in interstate commerce (Tr. 319-20). Defendant further stipulated that his palm print was recovered from the rifle leaning against the bedroom closet wall. Tr. 263.

After the Government concluded its case-in-chief, the Court advised Defendant about his right to testify. As it does in all criminal cases, the Court explained to Defendant that it was his turn to present any witnesses and evidence if he would like, that he had a right to testify if he chose to do so, and that he also had a right not to testify. The Court informed Defendant that if chose not to testify, it would instruct the jury not to draw any negative inferences about the fact that defendant did not testify or that the jurors should not even consider that fact in their deliberations. Tr. 354. The Court then read the corresponding jury instruction and asked Defendant if he had any questions about his right to testify. Defendant responded "no." Tr. 355. The Court then asked if Defendant had enough time to talk to his counsel about whether he wanted to testify. Defendant responded, "Yes." *Id*. In response to the Court's question, "And what is your decision with regard to whether you testify," Defendant replied, "No, I'm not going to testify." *Id*. Both counsel informed the Court that they were satisfied with the Court's colloquy with Defendant regarding his right to testify. *Id*.

**II.**     **Legal Standards**

Where, as here, a Rule 29 motion challenges the sufficiency of evidence, the court must consider that evidence in the light most favorable to the Government. *United States v. Johns*, 686

4

F.3d 438, 446 (7th Cir. 2012). The Court cannot "reweigh the evidence" or undertake its own assessment of witness credibility. See, *e.g.*, *United States v. Peterson*, 823 F.3d 1113, 1120 (7th Cir. 2016) (citing *United States v. Pribble*, 127 F.3d 583, 590 (7th Cir. 1997)); see also *United States v. Arthur*, 582 F.3d 713 (7th Cir. 2009) ("[W]e do not reassess the weight of the evidence or second-guess the trier of fact's credibility determinations."). Instead, the Court asks whether the record contains "no evidence" from which a reasonable jury could have found guilt beyond a reasonable doubt. *Peterson*, 823 F.3d at 1120 (citation omitted); *United States v. Stevenson*, 680 F.3d 854, 855-6 (7th Cir. 2012) ("[The court] will overturn a jury verdict for insufficiency of the evidence only if the record is devoid of evidence from which a reasonable jury could find guilt."); *United States v. Crowder*, 36 F.3d 691, 695 (7th Cir. 1994) ("[The court will] overturn the jury's verdict only when the record contains no evidence, regardless of how it is weighed."). The Seventh Circuit has observed that this standard of review will prove to be a "nearly insurmountable hurdle" for the Rule 29 movant. *United States v. Torres-Chavez*, 774 F.3d 988, 993 (7th Cir. 2014).

Under Rule 33 of the Federal Rules of Criminal Procedure, the Court can "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A new trial is appropriate "only if there is a reasonable possibility that the trial error had a prejudicial effect on the jury's verdict." *United States v. Maclin*, 915 F.3d 440, 444 (7th Cir. 2019) (citing *United States v. Flournoy*, 842 F.3d 524, 530 (7th Cir. 2016)). The Seventh Circuit has held that "[a] jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly." *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994) (citation omitted). A court should grant a motion for a new trial only if "'it would be a miscarriage of justice to let the verdict stand.'" *United States v. Chogsom*, 2017 WL 4467467, at *3 (N.D. Ill. Oct. 6, 2017) (quoting *United States v. Swan*, 486 F.3d 260, 266 (7th Cir. 2007)). Thus, Rule 33

motions are granted only in "exceptional circumstances" (*Reed*, 875 F.2d at 107) and in "the most 'extreme cases'" (*Peterson*, 823 F.3d at 1113 (7th Cir. 2016)).

### III. Analysis

#### A. Ineffective Assistance of Counsel

Defendant claims his trial counsel's performance was ineffective on multiple grounds: (1) failure to investigate and prepare a defense, (2) inadequate cross-examination of key witnesses, and (3) insufficient discussion of Defendant's right to testify. The Court analyzes each of these claims in turn but concludes that none has merit.

##### 1. Failure to Investigate and Prepare a Defense

Defendant's chief failure-to-investigate claim is that his counsel ignored his request to interview or subpoena two witnesses who were present in the apartment during his arrest.[1] One of those witnesses was Defendant's roommate; the other was a young woman who told police all the drugs in the apartment were hers. "*Strickland* * * * permits counsel to make a reasonable decision that makes particular investigations unnecessary. Resources are limited, and trial counsel must eventually shift from pretrial investigation to trial preparation." *Campbell v. Reardon*, 780 F.3d 752, 765 (7th Cir. 2015) (internal quotation marks omitted) (quoting *Strickland*, 466 U.S. at 691); see also *Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987). ("Again, we stress that we do not hold that trial defense counsel must track down every lead or must personally investigate every evidentiary possibility"). The question, therefore, is whether counsel's decisions in regard to these witnesses was reasonable.

---

[1] As an initial matter, it is worth quickly disposing of any contention by Defendant [see 134, at 11] that "trial counsel utterly failed to conduct any investigation." Before and during trial, defense counsel carefully examined the drug ledger seized from defendant and compared it with reproduced copies offered by the government's expert, effectively highlighting key differences for the jury. Tr. 399-401. In addition, after reviewing the lead case agent's report, trial counsel tried unsuccessfully to suppress the evidence seized from Defendant's satchel, including the drug ledger, as the fruit of an unlawful search.

The Government contends that neither of these potential witnesses appears likely to have provided testimony that would materially aid the defense—and, in fact, counsel may have felt their testimony might actually hurt Defendant's case. The Court agrees. The roommate's identification was found in the second bedroom, not the bedroom in which the drugs and guns were found. Pierchala's testimony corroborated which bedroom belonged to which male occupant of the apartment. Counsel may reasonably have believed that the roommate would make yet another witness placing himself in the second bedroom and Defendant in the bedroom with the contraband, thereby strengthening rather than weakening the Government's case. See, *e.g., Ruhl v. Hardy*, 743 F.3d 1083, 1096-97 (7th Cir. 2014) ("In order for counsel's failure to offer such evidence to constitute ineffective assistance, Ruhl would have to show that the evidence was available and that it would have been helpful to his defense"). Counsel may also have reasonably believed that no jury would accept the female potential witness's attempt to take the blame for "everything" in the apartment when law enforcement encountered Defendant with a loaded gun, a ledger, and thousands of dollars in cash, and then executed a warrant that yielded additional drugs, drug paraphernalia, and guns in a bedroom where Defendant's identification was found. In short, giving appropriate deference to counsel's strategic decisions, any failure to interview or subpoena those witnesses was not objectively unreasonable.

Furthermore, as noted above, counsel was faced with overwhelming, corroborated government evidence that Defendant was the sole occupant of the bedroom where the drugs and guns were found and thus that those instrumentalities of the charged crimes were in his actual or constructive possession. Thus, even if one of the witnesses claimed ownership of the guns or drugs in Defendant's bedroom, that claim still would not rebut the inference that Defendant constructively possessed the guns and drugs in his bedroom. See Seventh Circuit Pattern Jury

7

Instruction § 4.13 ("More than one person may possess an object. If two or more persons share possession, that is called 'joint' possession.").

In a *pro se* supplemental filing [142], Defendant advanced a few additional ineffective assistance claims focusing on counsel's alleged failure to investigate a supposed link between an indicted law enforcement officer and Case Agent Postupaka. Specifically, Defendant claims that because Agent Postupaka and another investigator in this case were once in the same group as an indicted agent, counsel should have "investigate[d] the role of [the indicted agent] or his possible connection to Agent Postupaka and Yasin as to any improprieties in this case." But Defendant does not identify any specific "improprieties," nor does he draw any connection between the indicted agent and any aspect of this case whatsoever. Absent any such showing, Defendant's arguments are purely speculative and provide no basis for revisiting any of counsel's strategic decisions in this case. See *Ruhl*, 743 F.3d at 1096-97.

## 2. Failure to Cross-Examine Government Witnesses

Defendant also claims that it was objectively unreasonable for his counsel not to cross examine two agents who searched Defendant's bedroom. According to Defendant, these witnesses were "crucial" because they found the guns and drugs that Defendant was charged with possessing. This argument is not persuasive. While it is true that the agents found the incriminating evidence, their testimony consisted mostly of authenticating photos of the incriminating evidence—drugs, guns, ammunition, identification, and tools of the drug trade—found in Defendant's bedroom. Since the photos spoke for themselves, it is hard to imagine what counsel would have asked that could have made a difference in the case.

The same is true for counsel's failure to substantively cross-examine Agent Reynolds, the drug trafficking expert. As the Government notes, Reynolds offered only general opinions; he did

not directly testify about any of the evidence in this case or offer any opinions about the evidence or Defendant. Moreover, counsel's sensible trial strategy was not to challenge the overwhelming evidence that drugs were being dealt from that location, but rather to suggest that to the jury that the drugs and guns were not Defendant's. Counsel thus could have reasonably concluded that methodically cross examining a general expert in drug trafficking would not advance that defense. See *United States v. Jackson*, 546 F.3d 801, 814 (7th Cir. 2008) ("[D]eciding what questions to ask a prosecution witness on cross-examination is a matter of strategy").

In any event, counsel's performance must be judged as a whole, so his election to forego cross-examinations of three witnesses must be considered alongside his robust cross-examination of other more critical government witnesses, including the lead DEA case agent, the FBI drug ledger expert, and Defendant's customer, Pierchala. These cross-examinations at least arguably concentrated counsel's fire on areas of import to the main themes of the defense. Counsel's cross-examination of Case Agent Postupaka sought to cast doubt on the Government's evidence that Defendant identified the rear bedroom as his. Postupaka testified that he heard and memorialized that statement. Because the statement focused on an alleged admission by Defendant, was unrecorded, and was not made in Defendant's native language, it was a good target for cross-examination. Furthermore, probing the *bona fides* of that statement was consistent with the defense that the drugs and guns belonged to someone else.

### 3. Failure to Adequately Discuss Right to Testify

Defendant next claims that counsel did not adequately explain and discuss his right to testify at trial. According to Defendant, the only reason he did not testify was "because his attorney told him he should not testify" and "did not inform [defendant] that he could testify against his attorney's advice." The transcript of Defendant's colloquy with the Court squarely refutes this

9

claim. After being informed that "you do have a right to testify if you wish to do so, and my expectation is that you will have consulted with [defense counsel] about your decision whether to testify," Defendant told the Court that he had enough time to talk to his lawyer about whether to testify and that he chose not to testify. Tr. 355. Defendant did not mention any disagreements with his attorney on this point, nor did he say that he was declining to testify on his attorney's advice. Instead, he confirmed that he understood his right to testify and that he had decided to waive that right after sufficient discussion with his attorney. His claim on this point thus is without merit. Cf. *Ingram v. United States*, 553 F. Supp. 2d 975, 978 (N.D. Ill. 2008) (dismissing certain arguments that trial counsel was deficient where those arguments were "contradicted by the record").

### 4. Prejudice

Even if defense counsel's performance were deficient, Defendant cannot show a fair probability that, but for those deficiencies, the jury would have acquitted him or failed to reach a verdict. As discussed in greater detail below, the verdict here was "overwhelmingly supported by the record" and thus "less likely to have been affected by errors than one that is only weakly supported." *Mosley v. Atchison*, 689 F.3d 838, 851 (7th Cir. 2012). On Count One, the jury heard from multiple agents who found guns, drugs, drug dealing materials, and Defendant's identification in a bedroom that Defendant admitted—and another witness confirmed—was his. The jury also saw photos of that evidence and Defendant's fingerprints were found on one of the guns. On Count Two, the jury heard from an FBI expert witness who opined that the notebook Defendant was carrying during his arrest was a drug ledger reflecting sales to multiple customers and from a DEA expert who explained that drug traffickers commonly possess firearms in furtherance of their drug trafficking activities. The cooperating witness, Pierchala, was listed in

the ledger by his nickname, providing support that the item was exactly what the expert thought it was. On Count Four, the jury heard from an agent who saw law enforcement recover a loaded handgun from Defendant's person and heard testimony that Defendant admitted that he carried the gun for protection. Given the strength of this evidence, it is highly unlikely that any of the omitted investigation, cross-examination, or testimony about which Defendant complains would have resulted in a different outcome.

### B. Sufficiency of the Evidence

Defendant does not give specific reasons why he believes the trial evidence was insufficient to support a guilty verdict on Counts One and Two. As discussed above, any such argument would be futile, for the Government presented ample—indeed, overwhelming—evidence from which a reasonable juror could have found that Defendant committed the crimes charged in those counts. As to Count Four, Defendant claims that the Government failed to introduce evidence that Defendant knew he was prohibited from possessing the firearm, which he claims it was required to do under *Rehaif v. United States*, 138 S. Ct. 2121 (2019). Under *Rehaif*, the Government must "show that the defendant knew not only that he possessed a firearm, but that he belonged to the relevant category of persons barred from possessing a firearm." *United States v. Cook*, 970 F.3d 866, 870 (7th Cir. 2020). Here, the relevant category of prohibited person was his status as an alien in the country unlawfully, 18 U.S.C. 922(g)(5)(A). The superseding indictment [78] charged Defendant with knowingly possessing a firearm "knowing that he was then an alien illegally and unlawfully in the United States," a fact to which Defendant stipulated at trial when he acknowledged that a Government witness "would testify that on February 24, 2017, defendant [] was in the United States unlawfully," and that "defendant was aware on February 24, 2017 that he

11

as in the United States illegally." Tr. 324. In sum, the government introduced sufficient evidence for a jury to convict Defendant on Counts One, Two, and Four.

### C. Defective Warrant and Denial of Motion to Suppress

Defendant's supplemental filing also complaints about defense counsel's failure to challenge the search warrant that led to the discovery of the guns and drugs for which the jury convicted him at trial. In support of this claim, Defendant claims that Agent Postupaka – the affiant on the warrant – cited the Illinois aggravated unlawful use of a weapon statute despite knowing that the statute had been held unconstitutional. This claim fails on multiple grounds. First, while the Seventh Circuit and later the Illinois Supreme Court did invalidate portions of the older aggravated UUW statute in 2012 and 2013, respectively, the Seventh Circuit stayed its mandate for 180 days to allow the Illinois General Assembly to amend the statute, which is did in July 2013. See *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012) (declaring UUW statute unconstitutional but providing state legislature 180 days to fix the statute); *People v. Aguilar*, 2 N.E.3d 321, 328 (Ill. 2013) (post-*Moore* opinion invaliding the same UUW statute at issue in *Moore*, explaining that "[f]ollowing the decision in *Moore*, the General Assembly enacted the Firearm Concealed Carry Act, which * * * amended the AUUW statute to allow for a limited right to carry certain firearms in public. Neither the Firearm Concealed Carry Act nor the amended AUUW statute is at issue in this case"). By the time that Agent Postupaka applied for the search warrant in 2017, an amended and constitutionally valid UUW statute had been on the statute books for years. Foregoing a legal challenge to that statute was an eminently reasonable trial strategy for defense counsel in this case, as a motion to that effect was bound to fail.

Defendant also challenges the warrant because it permitted officers to seize drugs and other non-firearm items even though, in Defendant's view, the warrant only established probable cause for a firearm violation. This argument also fails. To begin, under the Illinois aggravated UUW statute, a person commits aggravated UUW when "the person possessing the weapon was engaged in a misdemeanor violation of the Cannabis Control Act * * * the Illinois Controlled Substances Act * * * or the Methamphetamine Control and Community Protection Act." 720 ILCS 5/24-1.6(a)(3)(E). The warrant here charged that drug (including methamphetamine) and gun dealing activities were being undertaken at the apartment, and thus it allowed agents to seize drugs, drug paraphernalia, and money as evidence, instrumentalities, and/or fruits of a UUW violation under (a)(3)(E). Finally, both the plain view doctrine and the good faith exception to the exclusionary rule permitted agents to seize any drugs or contraband they saw once they were lawfully inside defendant's apartment pursuant to the warrant. See *United States v. Peck*, 317 F.3d 754, 757 (7th Cir. 2003) (holding that a "facially valid warrant issued by a neutral, detached magistrate will be upheld if the police relied on the warrant in good faith").

Dated: November 30, 2021

Robert M. Dow, Jr.
United States District Judge